UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Randy E. Rhea,

    Plaintiff,

v.                                       Case No. 06-13617

Wal-Mart Stores, Inc.,          Honorable Sean F. Cox

    Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an employment discrimination case wherein Plaintiff claims that his previous employer discriminated against him based on his gender and age when it terminated him following an allegation of sexual harassment by a co-worker. The matter is currently before the Court on Defendant's Motion for Summary Judgment. The parties have fully briefed the issues and the Court heard oral argument on November 8, 2007. For the reasons that follow, the Court shall DENY the motion.

## BACKGROUND

Plaintiff Randy Rhea ("Rhea" or "Plaintiff") began his employment with Wal-Mart in Muscle Shoals, Alabama in 1996. (*See* Def.'s Statement of Material Facts Not in Dispute, and Pl.'s Response to Same, at ¶ 1). He transferred to a Wal-Mart store in Flint, Michigan about a year later. (*Id*. at ¶ 2).

During his tenure at the Flint store, Rhea worked in a variety of positions. (*Id*. at ¶ 3) On May 15, 2004, Rhea transferred to the Tire Lube Express Department ("TLE") to work as a

1

service writer. (*Id*. at ¶ 4). A service writer explains the available services to customers and then compiles a customer's relevant information prior to initiating any work on a vehicle. (*Id*. at ¶ 5). Rhea worked as a service writer for about six or seven months before taking the position of TLE Support Manager, the position he occupied when the events leading to his termination occurred. (*Id*. at ¶ 6-7).

During his employment, Rhea was provided a copy of the Wal-Mart Associate Handbook ("the Handbook") and signed an acknowledgment of receipt. (*Id*. at ¶¶ 8-10). The Handbook contains a section titled "Harassment or Inappropriate Conduct" which provides in pertinent part:

> Harassment or Inappropriate Conduct of any type, whether sexual, ethic, or racial, is not tolerated at Wal-Mart. Wal-Mart is committed to maintaining a work environment that is free of unlawful harassment as well as other inappropriate conduct, regardless of whether the conduct rises to the level of unlawful harassment. We want to provide a work environment where everyone is comfortable.
>
> Any negative or stereotypical comment or action, whether welcome of unwelcome, aimed at an individual's gender, race, religion, physical or mental disability, physical appearance, age, marital status, national origin, color, or sexual orientation is inappropriate at Wal-Mart and will not be tolerated.
>
> Associates who engage in any type of harassment or inappropriate conduct on Wal-Mart property, at Wal-Mart sponsored functions, or while traveling on behalf of the Company, whether 'on the clock' or not will be subject to disciplinary action up to and including termination.

(*Id*. at ¶ 12; Ex. C to Def.'s Motion at 24). The Handbook also sets forth the Coaching For Improvement process, which is "designed to inform an Associate when they are not meeting the requirements and expectations of their position." (*Id*. at ¶ 14; Ex. C to Def.'s Motion at 23). That same section reminds Associates that "[t]here are, however certain actions of misconduct that may result in immediate termination." (*Id*.). Several examples are listed including "rude or

2

abusive conduct toward a customer or Associate" and "Serious Harassment/Inappropriate Conduct." (*Id.*).

During his tenure with Wal-Mart, Rhea received positive performance evaluations, receiving overall rankings of "meets expectations" or "exceeds expectations." (Exhibit 2 to Pl.'s Br.). His evaluations also contained comments such as "Goes the extra mile for associates and customers," "always willing to learn, would recommend to managers program" "Good Team Player," and "works well with all assoc." (*Id.*).

The parties have very different versions of the facts that relate to the incident that led to Rhea's termination.

Rhea's coworker Amanda Bettencourt ("Bettencourt") testified that on the day in question Rhea essentially backed up into her (*i.e.*, bumped his buttocks against hers),[1] said "move your fat ass," and then later approached her from behind and put his finger on the back of her ear and "like caressed" the back of her ear. (Bettencourt Dep. at 20). Bettencourt promptly reported her allegations to Wal-Mart.

Rhea denies any wrongdoing. He testified that prior to the alleged incident, he had no problems with Bettencourt and did not associate with her out of work. (Rhea Dep. at 26-27). He states that on the day in question he recalls Bettencourt was arguing with her boyfriend on the telephone and that he simply tapped her on the shoulder to get her attention:

> Q. The day of the alleged occurrence with Amanda Bettencourt, you mentioned she had a disagreement with her boyfriend. Correct?
>
> A. Yes.

---

[1] Bettencourt testified that she does not know if the contact was intentional. (Bettencourt Dep. at 19).

> Q. And after that you did ask her about that disagreement. Correct?
>
> A. Yes.
>
> Q. And that's because you had heard her yelling?
>
> A. I heard her yelling, yes.
>
> Q. All right. Now, you mentioned you didn't have any physical contact with her, you didn't rub against her or anything like that. You did tap her on the shoulder. Correct?
>
> A. Yes, I did tap her on the shoulder for like a millisecond to get her attention, because I remember saying a couple times, I called her name, Amanda, Amanda. She was turned away from me. I tapped her on the shoulder like that, hey, Amanda. She turned around. That was it. I asked her if she was okay, because she said she looked like – I heard her yelling at her boyfriend and she looked like she was upset.

(Rhea Dep. at 95-96). Rhea left work that day not knowing that Bettencourt had filed a complaint against him.

Cressler testified that to his knowledge, prior to the alleged incident with Bettencourt, Wal-Mart had never received any formal or informal complaints about Rhea. (Cressler Dep. at 17-18).

Cressler acknowledges that according to the disciplinary procedures of Wal-Mart, an employee is supposed to have a chance to present their point of view before termination. (Cressler Dep. at 63). After Bettencourt made a complaint, but before talking to Rhea, Cressler, Store Manager Michael Walker ("Walker") and TLE District Manager Tom Jung ("Jung") watched a videotape that Wal-Mart contends showed the incident. (Cressler 46-49). Cressler testified that all three then decided that Rhea should be terminated. (*Id.* at 49).[2] They did not

---

[2]Jung also testified that the decision to terminate Rhea had been made before they talked to Rhea. (Jung Dep. at 28).

discuss any discipline short of termination. (*Id*. at 50).

They then called Rhea into the office. (*Id*.). At this point, Rhea knew nothing about Bettencourt's complaint. Cressler testified that Walker explained the sexual harassment allegations to Rhea, who seemed surprised. (Cressler Dep. at 50-51). Rhea denied the allegations:

> Q. All right. What happened next?
>
> A. Randy denied the allegations.
>
> Q. Okay. What do you recall Randy saying?
>
> A. Basically that he wouldn't do something like that, that he didn't believe that it was true, that he doesn't remember doing anything like that. You could tell that he was upset.

(Cressler Dep. at 51). They then told Rhea that the three men would review all the information they had and, after Rhea left, they reviewed the videotape again. Rhea was then terminated.

Although the videotape was the basis for Rhea's discharge, it is undisputed that Rhea was never shown the videotape. (Cressler Dep. at 45 & 52). Although it is Wal-Mart's standard practice to retain such materials at its home office, for reasons unknown, during this litigation Wal-Mart has been unable to locate the videotape, Bettencourt's written statement, or the incident investigation report called the "red book." (Cressler Dep. at 53-56).

Rhea was ultimately replaced by Dawn Magee, a female employee who is approximately 12 years[3] younger than Rhea. (*See* Ex. 7 to Pl.'s Response).

---

[3]Plaintiff's date of birth is July 29, 1960. (Pl.'s Compl. at ¶ 17). Ms. Magee's date of birth is July 10, 1972. (Ex. 7 to Pl.'s Resp. at 10).

Rhea filed suit against Wal-Mart on August 14, 2006, asserting the following claims: gender discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") (Count I); sex discrimination in violation of Title VII (Count II); age discrimination in violation of the ELCRA (Count III); and age discrimination in violation of the Age Discrimination in Employment Act (Count IV).

Standard of Decision

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

## **ANALYSIS**

At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on his discrimination claim. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Here, Rhea does not contend that any direct evidence supports his gender or age discrimination claims. He must therefore rely on circumstantial evidence.

Under the circumstantial evidence approach, a plaintiff must show the existence of facts

which create an inference of discrimination under the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Both parties acknowledge that the *McDonnell Douglas* framework is applied to Plaintiff's gender and age discrimination claims in this case and that Plaintiff bears the burden of establishing a prima facie case.

In order establish a prima facie case of gender or age discrimination, Plaintiff must establish that: 1) he is a member of the protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position he held, and 4) he was replaced by a person outside of the protected class or that similarly situated non-protected employees were treated more favorably. *Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000).

**A.** **Plaintiff Has Established A Prima Facie Case Of Discrimination.**

Wal-Mart contends that Rhea cannot establish a prima facie case of gender or age discrimination because: 1) he cannot identify any non-protected individuals (*i.e.*, females or younger employees) who were treated differently than he was; and 2) once he sexually harassed his co-worker he was no longer "qualified" for his position.[4]

Wal-Mart asserts that it did not immediately replace Rhea following his termination because of low business volume and lack of qualified applicants. Wal-Mart states that it did place Dawn Magee, a younger female associate, in the position about 16 months later. Wal-Mart claims that when a significant period of time lapses between the adverse action and the hiring of a new employee "the support for an age discrimination claim is seriously eroded." (Def.'s Br. at

---

[4]At oral argument, however, defense counsel conceded that Rhea was qualified for his position.

13). The only authority Wal-Mart offers for that statement is *Lewis v. Brumfield*, 1998 WL 1992519, an unpublished decision from the Michigan Court of Appeals.

In response, Rhea contends that he can establish a prima facie case. He asserts that there can be no dispute that he was "qualified" for his position and that the conduct that led to his discharge cannot be considered in evaluating the prima facie case under *Wexler*. With respect to the final element of the prima facie case, Plaintiff contends that he was replaced by someone outside of the protected class (*i.e.*, a female). He contends that he was replaced by Dawn Magee, a younger female. Rhea contends that Wal-Mart's reliance on *Lewis* is misplaced because in that case the employee at issue was initially replaced by someone the same age as the plaintiff and a younger employee was not put into that position until a year and a half later. Here, Rhea claims there is no dispute that Magee was the very next person to hold the position that Rhea had occupied following his termination.

Rhea also claims that he can satisfy a prima facie case of age discrimination because he was treated less favorably than a similarly-situated younger co-worker, Gerald Little.

The Court agrees that Rhea has established a prima facie case of gender and age discrimination. Wal-Mart's argument that Rhea is not qualified based on the alleged sexual harassment that led to his termination is misplaced. *See Wexler*, 317 F.3d at 574 ("[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case."). The various performance evaluations submitted by Rhea are sufficient to establish that he was qualified for his position.

The Court further concludes that *Lewis* does not support Wal-Mart's position that Rhea cannot make out a prima facie case simply because there was a gap in time between his firing

and the hiring of his replacement. His replacement was still a younger female employee, and therefore, Rhea has established the final element of a prima facie case.

**B.      Plaintiff Has Produced Sufficient Evidence Of Pretext.**

Once a plaintiff establishes such a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the Plaintiff's discharge. Once a defendant articulates a nondiscriminatory reason for the challenged action, the plaintiff bears the burden to prove by a preponderance of the evidence that the proffered explanation was a pretext for discrimination. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998). That is, once the employer has come forward with a nondiscriminatory reason for terminating the plaintiff, the "plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).

A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment act by showing that the proffered reason 1) had no basis in fact, 2) did not actually motivate the defendant's challenged conduct, or 3) was insufficient to warrant the challenged conduct. *Wexler v. White Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003); *Manzer*, 29 F.3d at 1084. The first type of showing consists of evidence that the proffered bases for the termination never happened (*i.e.*, that they are factually false). With respect to the second kind of showing, "the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id*. The third showing consists of evidence that other employees, particularly those

9

not in the protected class, were not fired even though they engaged in similar conduct. *Id.*

Here, Wal-Mart contends that even if Rhea can establish a prima facie case of age or gender discrimination, it had a legitimate, nondiscriminatory reason for terminating him – his sexual harassment of his co-worker. Wal-Mart asserts that Rhea cannot show that reason is pretextual.

Wal-Mart contends that Rhea's disagreement with its decision to terminate him and his denial of sexually harassing Bettencourt does not amount to pretext. Citing *Smith v. Chrysler*, 155 F.3d 799, 807 (6th Cir. 1998), Wal-Mart asserts that it is insufficient for the plaintiff to merely allege a dispute over the facts surrounding his discharge, but rather, the plaintiff must present evidence demonstrating that the employer did not honestly believe in the proffered non-discriminatory reason.

Wal-Mart also contends that if "there is no material dispute that the employer made a reasonably informed and considered decision that demonstrates an honest belief in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual." (Def.'s Reply Br. at 1)(citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001)).

Plaintiff responds that pretext can be shown here in a variety of ways, which are summarized as follows:

- Rhea was a long-term employee who received excellent performance evaluations and had never had any previous discipline problems of any kind, let alone sexual harassment.

- Nevertheless, after a single complaint of sexual harassment by a co-worker, Wal-Mart made the decision to terminate Rhea without even asking his side of the story, in violation of Wal-Mart's policy.

- The individuals who decided to terminate Rhea before speaking with him admit they did

> not even discuss any discipline short of termination, although Wal-Mart's policies include same.

- A few months prior to this incident, however, the same individuals received a sexual harassment complaint about a younger employee, Gerald Little, and did not terminate that employee. Rather, Mr. Little was given only a warning by the same managers who terminated Rhea.

- Wal-Mart discharged Rhea based on the videotape, but did not show the videotape to Rhea even after he denied the allegations.

- Although Wal-Mart's policy is to retain such materials at its home office, Wal-Mart has lost the videotape, Bettencourt's written statement and the "red book" on this incident. Thus, Rhea cannot submit the videotape as evidence in this case.

The Sixth Circuit has explained that "[t]here are no hard and fast rules as to . . . what evidence is needed in order to establish pretext." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995). As Plaintiff notes, evidence of pretext is not to be viewed in insolation but with an awareness that each item of evidence buttresses the other. *Ercegovich* , 154 F.3d at 356.

The Court concludes that Rhea has produced sufficient evidence of pretext that could permit a reasonable jury to conclude that Rhea's age and/or gender were a motivating factor in Wal-Mart's decision to terminate him.

Based on the evidence that has been submitted, the Court concludes that Wal-Mart is not entitled to summary judgment based on the "honest belief rule." In *Smith*, the Sixth Circuit explained that in order for an employer's proffered non-discriminatory reason for its adverse action to be considered honestly held, the employer must be able to establish its reasonable reliance on particularized facts that were before it at the time of the decision. *Smith*,155 F.3d at 807. Even if the employer can make such a showing, however, the protection afforded by the rule is not automatic. *Id.* The "key inquiry" is whether the employer made a reasonably

informed and considered decision before taking an adverse employment action. *Id.* "When the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the employer in such a process cannot be said to be honestly held." *Id.* at 807-808.

Here, Plaintiff has produced sufficient evidence to allow a reasonable jury to conclude that Wal-Mart failed to make a reasonably informed and considered decision before terminating Rhea. Plaintiff has produced evidence to show that he was a long-term employee with positive performance evaluations and no previous formal or informal complaints of any nature. Although Wal-Mart's policy is to not take any employment actions before hearing an employee's "side of the story," the managers at issue here did just that. They determined that Rhea would be terminated the very next day following the alleged incident -- before even speaking with Rhea. They also declined to even consider discipline less than termination, even though Wal-Mart had a policy generally providing for progressive discipline and another younger employee had been given only a warning, by these same managers, following a sexual harassment complaint by a co-worker. They also did not show Rhea the videotape that they based their decision upon and now cannot produce that videotape, or any other materials related to the investigation. The Court agrees that, for purposes of this motion, an adverse inference may be drawn that the information would have been harmful to Wal-Mart. *See e.g., Clay v. United Parcel Service, Inc.*, 2007 WL 2457455 (6th Cir. 2007).

Accordingly, the Court shall deny Wal-Mart's Motion for Summary Judgment.

**C.** **Defendant Is Not Entitled To Summary Judge Based On The After-Acquired Evidence Doctrine.**

The after-acquired evidence doctrine applies to bar an employee from obtaining certain remedies in a discrimination case. *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996). Where an employer can show it would have been entitled to terminate the employee for severe wrongdoing, if it had known of the employee's wrongdoing at the time, the employee's remedies are limited. *Id*. Where an employer seeks to reply upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge. *Id*. "As a general rule, under the after acquired evidence doctrine the employee is barred from obtaining front pay and reinstatement, and backpay is limited." *Id.; see also Starnes v. JLQ Auto. Svs. Co.,* 442 F.Supp.2d 416, 428 (E.D. Mich. 2006).

Wal-Mart contends that in March of 2007, it discovered that Rhea had previously sexually harassed another female employee, Karin Burnett ("Burnett"), during his employment at the Flint Store. Wal-Mart contends that the after-acquired evidence rule cuts off Rhea's damages as of March 6, 2007, the date on which it learned of the previous sexual harassment by Rhea.

In response, Rhea denies the allegations made by Burnett and refers the Court to his deposition testimony regarding same. (*See* Rhea Dep. at 52-53). Thus, Rhea contends that a genuine issue of material fact exists as to whether the conduct alleged by Burnett occurred.

The Court agrees. When an employer seeks to rely on the after-acquired evidence defense**,** it must first establish that the wrongdoing in fact occurred, and that the wrongdoing was of such severity that the employee would have, in fact, been terminated. *Wher v. Ryan's Family Steak Houses, Inc*., 1996 WL 585892 (6th Cir. 1996). Here, there is a factual dispute as to

13

whether or not the conduct alleged by Burnett occurred. Accordingly, Wal-Mart's request for summary judgment based on the after-acquired evidence must be denied.

## **CONCLUSION & ORDER**

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED.**

**IT IS SO ORDERED.**

                                              S/Sean F. Cox
                                              Sean F. Cox
                                              United States District Judge

Dated: November 14, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 14, 2007, by electronic and/or ordinary mail.

                                              S/Jennifer Hernandez
                                              Case Manager